UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID VIVENZIO, SCOTT WILKINSON, and
JOHN A. FINOCCHIO, JR.,

                                          Plaintiffs,

                v.                                                                      5:05-CV-531

CITY OF SYRACUSE, MATTHEW J. DRISCOLL,
Mayor of the City of Syracuse, JOHN T. COWIN,
Chief of the City of Syracuse Fire Department,
ONONDAGA COUNTY PERSONNEL DEPARTMENT,
ELAINE L. WALTER, Commissioner of the Onondaga
County Personnel Department,

                                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| AMDURSKY, PELKY, FENNELL &<br>  WALLEN, P.C.<br>Attorneys for Plaintiffs David Vivenzio and<br>  Scott Wilkinson<br>26 East Oneida Street<br>Oswego, New York 13126 | TIMOTHY J. FENNELL, ESQ. |
| JOHN A. FINOCCHIO, JR.<br>Plaintiff Pro Se<br>329 Stafford Avenue<br>Syracuse, New York 13206 | |
| RORY A. McMAHON, ESQ.<br>City of Syracuse Corporation Counsel<br>Attorneys for Defendants City of Syracuse,<br>  Matthew J. Driscoll, and John T. Cowin<br>300 City Hall<br>Syracuse, New York 13202 | NANCY JEAN LARSON, ESQ.<br>Assistant Corporation Counsel<br>CATHERINE ENA CARNRIKE, ESQ.<br>Assistant Corporation Counsel |
| PETRONE & PETRONE, P.C.<br>Attorneys for Defendants City of Syracuse,<br>  Matthew J. Driscoll, and John T. Cowin<br>1624 Genesee Street<br>Utica, New York 13502 | DAVID H. WALSH, IV, ESQ. |

ONONDAGA COUNTY LAW DEPARTMENT   CAROL L. RHINEHART, ESQ.
Attorneys for Defendants Onondaga County
 Personnel Department and Elaine L. Walter
421 Montgomery Street, 10th Floor
Syracuse, New York 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiffs David Vivenzio ("Vivenzio"), Scott Wilkinson ("Wilkinson"), and John Finocchio ("Finocchio") (collectively "plaintiffs") bring this employment discrimination action against the City of Syracuse ("City"), its Mayor Matthew Driscoll ("Mayor Driscoll"), and its Fire Chief John Cowin ("Chief Cowin") (collectively "City defendants"), as well as the Onondaga County Personnel Department ("OCPD") and OCPD Commissioner Elaine Walter ("Commissioner Walter") (collectively "County defendants").

Collectively, plaintiffs assert the following causes of action: denial of equal protection of the laws based on race under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 ("§ 1983") (First Cause of Action); disparate treatment based on race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII") (Second Cause of Action); disparate treatment based on race under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 (Fourth Cause of Action); disparate treatment based on race under 42 U.S.C. § 1981 ("§ 1981") (Fifth Cause of Action); and disparate impact based on race under Title VII (Sixth Cause of Action). In addition, plaintiff Finocchio asserts a cause of action for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34 (Third Cause of Action).

There are three motions pending:

First, plaintiffs Vivenzio and Wilkinson move for summary judgment under Federal Rule of Civil Procedure ("Rule") 56. County and City defendants oppose.

Second, City defendants move for summary judgment under Rule 56. Plaintiffs oppose.

Third, County defendants move for summary judgment under Rule 56. Plaintiffs oppose.[1]

Oral argument was heard on September 20, 2007, in Utica, New York. Decision was reserved.

## II. FACTS

### A. Background

In 1978, African Americans comprised only 1% of the City's fire department and 2.2% of the its police department. Women were similarly underrepresented in those departments, making up 0% of the fire department and 2.2% of the police department. The City sought to increase the percentages of African Americans and women employed by the fire and police departments; however, provisions of the New York Civil Service Law limited its control over the hiring process. Specifically, all persons interested in City firefighter or police officer positions were required to take a civil service examination prepared, administered, and graded by New York State ("State"). OCPD then compiled a list of

---

[1] It should be noted that plaintiff Finocchio, who is acting pro se, is not a movant. While initially represented by counsel, he elected to discontinue that representation and represent himself. Thus, his counsel was granted leave to withdraw as counsel on January 23, 2007. (Docket No. 74.) In response to the various motions described above, Finocchio has submitted a short, handwritten memorandum adopting by reference the opposition arguments of plaintiffs Vivenzio and Wilkinson; however, he has not joined in their motion for summary judgment or moved independently.

Onondaga County ("County") residents who passed the civil service examination, ranking them based on their examination scores. Such lists were known as "eligible lists." Under Civil Service Law § 61(1), local fire and police departments were required to hire from among the three highest scoring candidates on the list – referred to as the "rule of three." Application of the rule of three almost always resulted in the hiring of white males for City firefighter and police officer positions. However, if the City deviated from the process just described, its officials would be subject to civil and criminal liability under the Civil Service Law.

In a valiant and unprecedented effort to "live up to their constitutional oaths of office and correct the racial imbalance in the city's public safety forces without violating the New York Civil Service Law" (County Defs.' Notice of Mot. Ex. A at 28 (Alexander v. Bahou, 86 F.R.D. 194, 196 (N.D.N.Y. 1980)), City officials – namely, then-Mayor Lee Alexander, then-Police Chief Thomas Sardino, and then-Fire Chief Thomas Hanlon – brought an action in this District against the New York State Civil Service Commission and the Commissioner of OCPD. The City officials sought declaratory and injunctive relief prohibiting the State and County from administering the existing civil service examination – which, the City believed, disproportionately disqualified or otherwise devalued African American and female examinees in violation of federal and state employment discrimination laws – and directing them to implement new, nondiscriminatory examinations. After some litigation, the parties to that action came to an agreement that the City's fire and police departments should be representative of the broader community and, thus, willingly entered into negotiations to resolve the dispute. In March 1980, after intensive and lengthy negotiations, the parties reached a settlement.

The settlement was memorialized in a consent decree signed by the parties to that action and approved by the Court. The consent decree provides that,

> [t]o accommodate the City's efforts to increase black and female hiring in its police and fire departments: (a) the City shall have the right, to the extent necessary to meet its obligations and goals under this decree, to grant priority to blacks who have successfully passed the applicable civil service examinations . . . .

(County Defs.' Notice of Mot. Ex. A at 10 (¶ 1).) The goals of the consent decree are stated as follows:

> The City desires to and shall adopt, and use its good faith efforts to achieve, the long-term goal to utilize blacks in all ranks within the fire and police departments in numbers approximating their representation within the labor force which is available for employment in the City of Syracuse and their interest in, and ability to qualify for, such positions. Subject to the foregoing sentence, the parties agree that the long-term goal for blacks in each rank is approximately 10%.
>
> To achieve this long-term goal, and subject to the availability of qualified black applicants on the appropriate eligible list, the City desires to and shall seek, annually, commencing with the entry of this decree, on an interim basis to achieve the goal of hiring blacks for 25% of all entry-level firefighter and police officer hires.

Id. at 13-14 (¶¶ 6-7). The consent decree further provides that "[t]he City desires to and shall continue to use eligible lists developed by [OCPD] in accordance with this decree." Id. at 17 (¶ 12). As a result, OCPD began compiling two eligible lists – one containing the names of eligible non-African American candidates, referred to as the "general list"; and another containing the names of eligible African American candidates, inartfully referred to as the "black list."

The Court issued a memorandum-decision and order setting forth its reasons for concluding that the consent decree was constitutionally permissible. Alexander v. Bahou, 86 F.R.D. 194 (N.D.N.Y. 1980) (Munson, J.).

### B. Present Dispute

In June 2002, OCPD administered a civil service examination for aspiring City firefighters. Plaintiffs, who are all white males, were among the examinees. The State Civil Service Department scored the examinations and sent them to OCPD. Commissioner Walter then compiled a "general" eligible list of County residents that passed the examination and ranked them based on their overall scores. Fourteen examinees, including plaintiff Finocchio, were ranked "one" with a total score of 105 (100 points for a perfect examination and an additional 5 points for being a military veteran); one hundred six examinees were ranked "two" with a total score of 100; and one hundred seventy-five examinees, including plaintiffs Vivenzio and Wilkinson, were ranked "three" with a total score of 95. Under the Civil Service Law, that eligible list was valid through 2005.

In early 2004, Mayor Driscoll approved a plan to hire twenty-four firefighters and set a minority hiring goal of 50%. The relatively high minority hiring goal was meant to compensate for the lack of minority hiring in 2002. (The City hired only one African American firefighter that year, and he resigned during the initial training period; the City did not hire any firefighters in 2003.) At the time Mayor Driscoll approved the hiring plan, African Americans comprised 16.58% of the entire fire department and 2% of its officers. According to the 2000 federal census, African Americans comprised 25.3% of the City's overall population and 9.4% of the County's overall population. Statistics reflecting the percentage of African Americans "within the labor force which is available for employment in the City of Syracuse" in or about 2004 is unknown.

In April 2004, the City requested eligible lists for firefighters from OCPD, and OCPD provided it with two eligible lists – a "general list" and a "black list." Chief Cowin

hired twenty-four firefighters from the lists, including twelve minorities – one woman, one Latino, and ten African Americans. Plaintiffs were not among the twenty-four new hires. The woman, the Latino, and one of the African Americans were hired from the "general list," i.e., they were not given preference based on their status as minorities. The other nine African Americans were hired from the "black list," i.e., they were given preference based on their race under the consent decree. All nine African Americans hired from the "black list" scored lower than plaintiff Finocchio, and three scored lower than plaintiffs Vivenzio and Wilkinson. In accordance with the Civil Service Law, OCPD was informed of and approved the City's hiring decisions.

In March 2005, the City sought to hire more firefighters. As it did in 2004, the City requested eligible lists from OCPD and, again, OCPD provided a "general list" and a "black list." The City hired twenty-five firefighters – nineteen from the "general list" and six from the "black list." Plaintiffs were not among the twenty-five new hires. All six African Americans hired from the "black list" scored lower than plaintiff Finocchio, and five scored lower than plaintiffs Vivenzio and Wilkinson. OCPD approved the City's hiring decisions as compliant with the Civil Service Law.

After exhausting their administrative remedies, plaintiffs filed this action in April 2005.

## III. STANDARD OF REVIEW

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991). The court will not try issues of fact

on a motion for summary judgment, rather it will determine "whether the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997).  In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).

## IV. DISCUSSION

As stated above, there are three motions for summary judgment pending.  In the interest of efficiency, overlapping points, i.e., points common to more than one motion, will be discussed in a single section.

### A. Standing

City and County defendants move for summary judgment on the ground that plaintiffs do not have standing because they suffered no injury-in-fact.  A plaintiff has standing to sue in federal court only if he has suffered an injury-in-fact; that is, "an invasion

of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992) (internal quotation marks, citations, and footnote omitted); see Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington Union Free School Dist., 478 F.3d 494, 498 (2d Cir. 2007). When a plaintiff challenges a race-conscious affirmative action program, the injury-in-fact is the denial of equal treatment while competing for the desired benefit, not the denial of the desired benefit itself. See Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 666, 113 S. Ct. 2297 (1993); Jana-Rock Constr., Inc. v. N.Y. State Dep't of Econ. Dev., 438 F.3d 195, 204 (2d Cir. 2006). More specifically,

> [w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

Ne. Fla. Chapter, 508 U.S. at 666, 113 S. Ct. at 2303.

While plaintiffs do not challenge the constitutionality of the consent decree itself (see Pt. IV.B n.2, infra), they do assert statutory and constitutional employment discrimination claims, including an equal protection claim, based on an argument that the consent decree was not viable in 2004 and 2005. Thus, plaintiffs are not required to prove, as City and County defendants suggest, that they would have been hired in 2004 or 2005 if the City had not given preference to African American candidates under the consent decree. Despite City defendants' self-serving assurances that, in any event, they would not

have hired plaintiffs, there is no way to know whether they would have been hired or not. It is enough, then, that plaintiffs have shown that they applied for City firefighter positions in 2004 and 2005 and scored higher than at least some of the candidates hired pursuant to the consent decree in those years. In other words, the injury-in-fact is the alleged denial of equal treatment in competing for employment as a City firefighter, not the denial of such employment.

Therefore, plaintiffs have standing to sue.

### B. Race-Based Employment Discrimination Claims

Plaintiffs move for summary judgment on their race-based employment discrimination claims (First, Second, Fourth, Fifth, and Sixth Causes of Action) on the ground that the consent decree was no longer viable when the City made race-based hiring decisions in 2004 and 2005 because its goals had been met.[2] City defendants also move for summary judgment on plaintiff's race-based employment discrimination claims on the ground that the consent decree was viable then, and remains so today, because its goals have not been met. County defendants also move for summary judgment on those claims but on different grounds. Since the facts related to plaintiffs' race-based employment discrimination claims are largely undisputed and all parties have moved for summary judgment, a determination on the merits of those claims is warranted. (See Pt. III, supra.)

---

[2] It should be noted, at the outset, that plaintiffs do not challenge the constitutionality of the consent decree. While plaintiffs vacillate between inconsistent positions and at times employ language hinting at a constitutional challenge, they concede that "[a]t the time the Consent Decree was entered, it complied with the constitutional requirement that it be narrowly tailored to meet a compelling governmental interest." (Pls.' Mem. in Supp. 14.) Since the terms of the consent decree have not changed since its inception and race-conscious affirmative action plans still must be narrowly tailored to meet a compelling governmental interest, it would be illogical to suggest that the consent decree was constitutional then but not today. Plaintiffs do argue, however, that the consent decree was no longer viable in 2004 or 2005 because its goals had been met and, therefore, City defendants' race-based hiring decisions in those years were unconstitutional and in violation of federal and state civil rights statutes.

Race-based employment discrimination claims under Title VII, the NYSHRL, § 1983, § 1981, and the Equal Protection Clause of the Fourteenth Amendment are all analyzed under the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). See Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) (citing Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998)) (Title VII and § 1983 employment discrimination claims are analyzed together); Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (Title VII and NYSHRL employment discrimination claims are analyzed together).  Under that framework, the plaintiff first must make out a prima facie case of discrimination by demonstrating that (1) he is a member of a protected class, (2) he applied and was qualified for the position, (3) he suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  See McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824.  Once the plaintiff has made this showing, the burden then shifts to the employer to produce a legitimate nondiscriminatory reason for the adverse employment action.  See id.  If the employer produces such a reason, the burden then shifts back to the plaintiff to show that the employer's stated reason is pretext for discrimination.  See id. at 804, 93 S. Ct. at 1825; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515-16, 113 S. Ct. 2742, 2752 (1993).

While each of the statutory and constitutional authorities upon which plaintiffs base their employment discrimination claims prohibit race-based employment discrimination, they do not prohibit all race-conscious affirmative action plans.  See United Steelworkers of Am., AFL-CIO-CLC v. Weber, 443 U.S. 193, 200-08, 99 S. Ct. 2721, 2726-29 (1979); Johnson v. Transp. Agency, Santa Clara County, Cal., 480 U.S. 616, 626, 107 S.

Ct. 1442, 1449 (1987).  An employer's demonstration of the existence and application of an affirmative action plan constitutes a legitimate nondiscriminatory reason under the McDonnell Douglas framework.  See Johnson, 480 U.S. at 626, 107 S. Ct. at 1449.  Thus, if an employer asserts its compliance with an affirmative action plan as its legitimate nondiscriminatory reason, the burden then shifts back to the plaintiff to show that the plan is invalid.

In this case, the undisputed facts confirm that plaintiffs have made out a prima facie case of discrimination.  Moreover, City defendants have asserted as a legitimate nondiscriminatory reason their compliance with the affirmative action plan delineated in the consent decree.  Thus, the burden rests with plaintiffs to demonstrate that the consent decree was not viable at the time of the City's 2004 and 2005 hiring decisions.

There are two problems with plaintiffs' argument that the consent decree was not viable in 2004 and 2005.  First, the consent decree never has been formally dissolved by the parties, the Court, or any other entity with the authority to do so.  Nor has the consent decree dissolved by operation of its own terms.  The consent decree does not contain terms that provide for automatic dissolution upon the satisfaction of its goals, after a certain period of time, or for any other reason.

Second, even assuming that, by its terms, the consent decree automatically dissolved or otherwise was rendered unviable upon the satisfaction of its goals, its goals have not been met.  The consent decree explicitly provides that its goal is "to utilize blacks in all ranks within the fire and police departments in numbers approximating their representation within the labor force which is available for employment in the City of Syracuse . . . .  Subject to the foregoing sentence, the parties agree that the long-term goal

for blacks in each rank is approximately 10%." (County Defs.' Notice of Mot. Ex. A at 13 (emphasis added).) The first portion of that excerpt, as well as the limiting language in the second portion – "[s]ubject to the foregoing sentence" – makes clear that the overriding goal of the consent decree is that the percentage of African Americans in the fire department approximate the percentage of African Americans in the City's labor force. Thus, the consent decree does not, as plaintiffs suggest, set a firm quota of 10%. This is further supported by the Court's acknowledgment, in the memorandum-decision and order approving the consent decree, that the 10% figure was based on census data showing that African Americans made up approximately 10% of the City's labor pool in 1970. See Alexander v. Bahou, 86 F.R.D. 194, 199 (N.D.N.Y. 1980).

While plaintiffs have shown that African Americans made up 16.58% of the City's fire department just prior to the 2004 hirings, they have not shown that that figure approximated the percentage of African Americans in the City's labor pool. Indeed, evidence that African Americans made up 25.3% of the City's overall population in 2000 suggests that it did not. Nor have plaintiffs demonstrated that the current percentage of African Americans employed by the fire department approximates the current percentage of African Americans in the City's labor pool. Consequently, plaintiffs' argument that the consent decree was not viable in 2004 and 2005 because its goals had been met, upon which rest all of their race-based employment discrimination claims, is without merit.

Therefore, plaintiffs' motion for summary judgment on their race-based employment discrimination claims (First, Second, Fourth, Fifth, and Sixth Causes of Action) will be denied, and City defendants' motion for summary judgment on those claims will be granted. Having found that City defendants did not engage in unlawful employment

discrimination as alleged by plaintiffs, it necessarily follows that County defendants also did not engage in such discrimination. Therefore, plaintiffs' race-based employment discrimination claims will be dismissed as against City and County defendants. As a result, there is no need to discuss the parties' other arguments in favor of summary judgment on those claims.

### C.  Plaintiff Finocchio's ADEA Claim

City defendants move for summary judgment on plaintiff Finocchio's ADEA claim (Third Cause of Action) on the ground that he has not raised an inference of age discrimination or shown that City defendants' asserted legitimate nondiscriminatory reason for not hiring him is pretext. County defendants move for summary judgment on that claim on the ground that the County is not an "employer" under the ADEA.

#### 1.  City Defendants' Motion

As its title suggests, the ADEA prohibits age discrimination in employment. Specifically, the ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Age discrimination claims under the ADEA are analyzed under the McDonnell Douglas framework discussed above (see Pt. IV.B, supra). D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 194-95 (2d Cir. 2007).

Plaintiff Finocchio, acting pro se, has shown that in 2004 he was fifty-two years of age, he scored 105 on the civil service examination and was ranked "one" on the eligible list

that year, and he was not among the twenty-four new hires.[3]  Thus, he has satisfied the first three elements of a prima facie case of age discrimination under the ADEA.  (Indeed, City defendants have failed to meaningfully assert that Finocchio has not satisfied those elements.)  With respect to the fourth required showing – that the City's decision not to hire him occurred under circumstances giving rise to age discrimination – Finocchio has shown that he scored higher than eighteen of the firefighters hired in 2004 and, thus, was passed over eighteen separate times according to the operation of the rule of three.  He has also shown that all twenty-four of those hired in 2004 were thirty-seven years of age or younger.  Those showings, in addition to the City's hollow assertions that Finocchio was passed over by operation of the rule of three and because he was "not a good candidate" and he "[w]ouldn't make a good firefighter," (Plumpton Dep. 64-65 (Docket No. 40 Ex. 11)), give rise to an inference of age discrimination.  Thus, Finocchio has made out a prima facie case of age discrimination under the ADEA.

   City defendants further argue that even if Finocchio has made out a prima facie case, he has not shown that their asserted legitimate nondiscriminatory reason – that he was properly skipped under the rule of three set forth at § 61(1) of the Civil Service Law – is pretext for discrimination.  However, that is not a legitimate nondiscriminatory reason.  The rule of three limits municipalities' discretion in the hiring process by requiring that they hire from among the three highest-scoring candidates.  The fact that a municipality complied with the rule of three in making a hiring decision does not mean that it did not also engage in unlawful discrimination.  Regardless of whether they complied with the rule of three, City

---

[3] According to Finocchio's submissions, it appears that his ADEA claim is limited to 2004.

defendants must provide a legitimate nondiscriminatory reason why they decided not to hire Finocchio, and they have not done so.

It is well-established that individuals cannot be held personally liable under the ADEA. See Parker v. Metro. Transp. Auth., 97 F. Supp. 2d 437, 452 (S.D.N.Y. 2000); see also Tomka v. Seiler Corp., 66 F.3d 1295, 1313-14 (2d Cir.1995), abrogated on other grounds, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998) (Title VII case). Moreover, it is the prevailing view in this Circuit that it is improper to even name individual defendants in their official capacities in Title VII actions. See, e.g., Tishman v. Associated Press, No. 05 Civ. 4278, 2005 WL 3466022 (S.D.N.Y. Dec. 16, 2005); Bottage v. Suburban Propane, 77 F. Supp. 2d 310 (N.D.N.Y. 1999); Warheit v. De Graff Mem'l Hosp., No. 97-CV-37E, 1998 WL 89346 (W.D.N.Y. Feb. 24, 1998); Reiger v. Orlor, Inc., 427 F. Supp. 2d 105 (D. Conn. 2006).

Therefore, City defendants' motion for summary judgment on plaintiff Finocchio's ADEA claim (Third Cause of Action) will be granted as to Mayor Driscoll and Chief Cowin but denied as to the City.

### 2. County Defendants' Motion

An ADEA claim is viable only if an employee-employer relationship existed between the parties. See 29 U.S.C. § 623(a). When federal statutes do not adequately define that relationship, courts apply "'the conventional master-servant relationship as understood by the common-law agency doctrine.'" O'Connor v. Davis, 126 F.3d 112, 115 (2d Cir. 1997) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23, 112 S. Ct. 1344, 1348 (1992) (internal quotation marks omitted)). The crucial element of the common-law master-servant relationship is the degree of control exercised by the master.

Indeed, for a defendant to be subject to liability under the ADEA, the defendant must have "exercised substantial control over significant aspects of compensation, terms, conditions, or privileges of [the] plaintiff's employment." Fox v. City Univ. of N.Y., 1996 WL 384915, *3 (S.D.N.Y. 1996) (Title VII case) (citing Amarnare v. Merrill Lynch, Pierce, Fenner & Smith Inc., 611 F. Supp. 344, 348 (S.D.N.Y. 1984)).

It is undisputed that County defendants enjoyed some administrative control over the hiring of City firefighters. County defendants administered the civil service examination, provided the City with eligible lists, and subsequently approved the City's hiring decisions. However, County defendants' role was largely administrative in nature and lacked the degree of control and discretion typically exercised by a common-law employer. Certainly the City exercises substantial control over all aspects of City firefighters' employment and, thus, is the apparent employer. The fact that the City's control over one aspect – the hiring process – has been somewhat diminished by the administrative role of the County does not establish a relationship between the City and the County such that they can be treated as a single employer under the ADEA. Simply put, County defendants are not "employers" under the ADEA because they do not exercise a sufficient degree of control over the employment of City firefighters.

Therefore, County defendants' motion for summary judgment on plaintiff Finocchio's ADEA claim (Third Cause of Action) will be granted.

## V. **CONCLUSION**

Summary judgment in favor of City and County defendants is appropriate with respect to all claims except for plaintiff Finocchio's age discrimination claim under the ADEA (Third Cause of Action) against the City. Pursuant to the wide discretion afforded district

courts in restructuring actions to promote judicial economy and efficiency, see Fed. R. Civ. P. 21 & 42(b), the remaining claim, which involves a single plaintiff (Finocchio) and a single defendant (the City) and is largely unrelated to the other claims, will be severed from the amended complaint to allow for the entry of judgment on the other claims. While the civil action number will remain the same, the caption of the remaining portion of this action will be amended as follows: John A. Finocchio, Jr. v. City of Syracuse.

Therefore, it is

ORDERED that

1. Plaintiffs' motion for summary judgment is DENIED;

2. City defendants' motion for summary judgment is GRANTED in part and DENIED in part;

3. City defendants' motion for summary judgment on plaintiffs' race-based employment discrimination claims (First, Second, Fourth, Fifth, and Sixth Causes of Action) is GRANTED and those claims are DISMISSED as against them;

4. City defendants' motion for summary judgment on plaintiff Finocchio's ADEA claim (Third Cause of Action) is GRANTED as to defendants Mayor Driscoll and Chief Cowin but DENIED as to the City;

5. County defendants' motion for summary judgment is GRANTED and the complaint is DISMISSED as against them in its entirety; and

6. Plaintiff Finocchio's ADEA claim (Third Cause of Action) against the City is SEVERED from the amended complaint.

IT IS SO ORDERED.

The Clerk is directed to enter final judgment dismissing the <u>First</u>, <u>Second</u>, <u>Fourth</u>, <u>Fifth</u>, and <u>Sixth</u> Causes of Action in their entirety and the <u>Third</u> Cause of Action against defendants Matthew J. Driscoll and John T. Cowin.

_____
United States District Judge

Dated: April 9, 2008
       Utica, New York.